CASE No. 1065.

MECHANICS' AND FARMERS' BUILDING AND LOAN ASSOCIATION v. DORSEY.

1. At a time when there was no statute regulating the rate of interest on money lent, a building and loan association was chartered, with power to

make such rules and by-laws as were not repugnant to the constitution and laws of the land; afterwards a usury law was enacted, limiting the rate of interest to seven per centum per annum. *Held,* that contracts of the association subsequently made were subject to the provisions of this law.

2. A member of a building and loan association received $1000, the full amount of his subscription to five shares of the capital stock, agreeing to pay monthly therefor (in addition to his installments of stock subscription,) $5 for interest and $7.25 for premium bid, total, $12.25 per month, or $147 per annum, until the assets of the association were worth $200 for every share. *Held,* that this was a greater rate of interest than seven *per cent. per annum,* and was, therefore, usurious.

3. *Columbia Building and Loan Association* v. *Bollenger,* 12 *Rich. Eq.* 124, recognized and followed.

Before MACKEY, J., Richland, October, 1879.

The plaintiff association commenced business under its charter in the city of Columbia in 1873. The defendant, John Dorsey, became a member of the association in January, 1878, by purchasing five shares for $295. In the same month defendant borrowed $1000 on these five shares, upon the terms mentioned in the opinion of this court. His bond did not call for the repayment of the principal sum borrowed, it being the scheme of the association that it was his shares of the capital stock received in anticipation. The bond was secured by mortgage of real estate. Defendant continued his payments under his bond until he had paid the sum of $189.75, after which no payments were made. This action was commenced September 27th, 1879, for foreclosure of the mortgage, alleging that defendant was in arrears nine months of subscription, interest and premium, and that the principal sum was, therefore, due also. The defence was usury.

This association was chartered February 15th, 1872.  15 *Stat.* 39.  The usury law was passed December 20th, 1877.  16 *Stat.* 325.  The loan was made January, 1878.

The Circuit judge, after a statement of the case and a review of authorities, concluded his decree as follows:

I am constrained, therefore, in accordance with the overwhelming weight of the decisions in this state, dating from the eighteenth century to the present time, supported by many most elaborate

decisions of the highest courts, both of this country and of England, to declare that in my judgment the statute of usury has been violated in the case under consideration.

It is the opinion of the court that the interest paid to the association plaintiff by the defendant, John Dorsey, should be credited upon the dues that should legally have been collected by the plaintiff, to wit, $5.83 per month, which is the interest, monthly, on $1000, at the rate of seven per centum per annum. The amount in interest, installments and premiums paid into the association plaintiff from January, 1878, to November, 1879, by the defendant, John Dorsey, was $174.75. The amount to which the association was entitled from the same date to November, 1879, at seven per centum per annum, was $134.09, leaving a balance of $40.66 in favor of John Dorsey.

It is therefore ordered, adjudged and decreed—

1. That the complaint be dismissed, with costs.

2. That the balance of $40.66 be placed to the credit of the defendant, John Dorsey, on the books of the association plaintiff, who shall apply the same at the rate of $5.83 monthly, to the satisfaction of the defendant's dues, until the said amount of $40.66 shall have been exhausted.

The plaintiff appealed upon the following grounds:

1. Because his Honor erred when he held that the bond was usurious.

2. When he allowed any interest at all to the plaintiff, it being clear law that if it was usurious no interest whatever can be collected.

3. When he did not decree and adjudge that the plaintiff should recover the principal sums loaned, under the act relative to usury, assuming that the judge was right in finding the contract was usurious.

4. Because the whole decree is erroneous throughout, and in conflict with all the law and decisions both for and against usury.

*Mr. John T. Sloan, Jr.,* for appellant.

The contracts of building and loan associations have been held to be exempt from the operation of the usury laws.   In England:

37 *E. C. L.* 335; 1 *Exch.* 494; 6 *Hare* 87. In United States: 46 *Ga.* 172; 22 *Gratt.* 233; 27 *Conn.* 282; 43 *N. H.* 195; 27 *N. J.* 223; 25 *Barb.* 264; 13 *Gray* 157, 168; 1 *McArthur* 385; 2 *Quart. L. J.* 347.

These contracts are not within the letter or spirit of the usury law. 7 *Barn. & C.* 453; 1 *Cowp.* 112; 4 *Denio* 264; 22 *Barb.* 118.

*Mr. J. E. Burke,* on same side, cited the following additional authorities: 8 *Eng. L. & Eq.* 57; 3 *Eng. L. & Eq.* 157; 15 *Id.* 478; 3 *Stockt.* 382.

*Mr. Andrew Crawford,* contra.

July 21st, 1881. The opinion of the court was delivered by

SIMPSON, C. J. The respondent, a stockholder to the extent of five shares, at $200 each, in the appellant association, on January 19th, 1878, under the rules and regulations of the association, obtained a loan of $1000 from said company. To secure this loan he gave his bond with mortgage of real estate, conditioned to pay to the association monthly payments of $17.25, itemized as follows: $5 for monthly subscription on his shares; $5 for interest on the sum advanced to him at the rate of six per cent. per annum, and $7.25 for the monthly premium which he contracted to give for the loan—in all $17.25.

This sum was reached in this way: The company was made up of those who had shares therein at $200 per share. These shares were not paid up in full at once, but were to be paid monthly at the rate of $1 per month. The money thus paid was to be lent out to stockholders in amounts not exceeding $200 per share, at the rate of six per cent. per annum. The privilege to borrow, however, was dependent upon the premium which might be offered at public bidding for the money proposed to be lent. The company, under the charter, was authorized to continue its operations until each share should amount to $200. In other words, the company expected, by lending out the monthly receipts on shares, the monthly receipts of interest, and

the premiums, to be able ultimately to return to each stockholder his stock of $200 per share, and when this time arrived the company was to end.

As has been stated, the respondent, being a stockholder of five shares, borrowed $1000, the full extent of his privilege. He obtained this sum at public sale, agreeing to give a premium of $1.45, which premium was to be paid monthly, and amounted to $7.25 for five shares. For this amount, and for the monthly interest, as also the monthly subscription on his five shares, he gave his bond above referred to with the mortgage, the monthly payments, as therein stated, being in the aggregate $17.25.

The respondent failing to meet his bond, according to its terms, this action was commenced to foreclose the mortgage. As a defence, the respondent interposed the plea of usury. The Circuit judge sustained this plea, and the appeal here presents the single question whether the contract is or is not usurious.

The association was chartered in 1872, and organized soon thereafter. At this time there was no law in this state making contracts usurious at any rate of interest; but when the contract sued on in this case was made, the act of 1877, known as the statute of usury, had been passed, and was of force. The respondent relies on this statute.

If the rules and regulations by which the association exercised the right and power to lend their assets, at public sale, to the highest bidder at a premium, in addition to a regular fixed interest thereon, had been a part of the original charter of this association, or had been incorporated therein as by-laws, then a question might arise whether, even though the contract was in violation of the act of 1877, that act could apply.

In the case of *Bibb County Loan Association* v. *Richards*, 21 *Ga.* 592, the decision was placed upon the ground that the charter had adopted the constitution and by-laws of the association as a part of the law by which it was regulated, and the charge being according to it, could not be illegal. So, here, if the constitution and by-laws of this association authorizing it to lend its money at a premium, to be ascertained by public sale, in addition to six per cent. interest, had been adopted as a part of the charter, it might be a question whether a subsequent act

·could divest the company of this right; but such was not the case. No constitution or by-laws had been adopted. On the contrary, the second section of the act gave power to the association to make such rules and by-laws for its government as are not repugnant to the constitution and laws of the land. This section limits the power of the association to the adoption of such rules and regulations as may not conflict with the constitution and laws of the land, and, by necessary implication, negatives .any rules and regulations which may be in conflict, whether they were in conflict at the time of their adoption, or become so by ·subsequent enactments. So that the main question before us is still whether the contract of respondent is usurious, as in conflict with the act of 1877.

The expectation of the association, if it could be fortunate and ·successful in its operations, was that at the winding up each ·shareholder would be entitled to $200 for each of his shares. This being a reasonable hope, founded upon the experience of such institutions, it was not supposed to be an unsafe proceeding to allow each stockholder to borrow the amount to which he would ultimately become entitled at the winding up, in advance, to wit, $200 per share. But to make the business profitable and the more certainly to ensure the result desired, some arrangement had to be devised to secure upon the money lent out a greater per cent. than six per cent., the regular established inter- ·est. Hence, the plan of permitting each shareholder to draw in .advance of the winding up of the concern the amount which he ·would no doubt become entitled to at that time; but, getting it thus in advance, he was required to pay not only the interest but ·such premium as other shareholders, who desired the money .also, might force him at public sale to pay. Each shareholder, by paying up his monthly dues of $1 on his shares and remain- ing quiet, might legitimately expect to get back, at the termina- ·tion of the business, $200 per share. If he desired, however, to :get the use of this money before the winding up, he was entitled to borrow it at the rate of six per cent., and such premium as the public sale might force upon him. This was the scheme. Was it usurious?

Usury is giving more than the legal rate of interest for the use

of money. Under the act of 1877 the legal rate is seven per cent. Dorsey borrowed $1000 from this association. This money, he expected, would be his at the end of the association, but he was not entitled to it, as owner, until the end. He borrowed it years in advance of the time when it should be his; until then it belonged to the association, and until then he contracted to pay not only six per cent. for the use of it, but an additional sum of $7.25 per month, $77 more than the legal rate of seven per cent. The interest on $1000, at seven per cent., would be $70. Dorsey, according to his contract, was to pay $147, to wit, $60 at $5 per month, styled interest, and $87 at $7.25 per month, styled premium ; just $77 per annum more than the act of 1877 allowed.

Now, although this amount is designated as part interest and part premium, can the fact be disguised that Dorsey has contracted to pay this amount for the use of the money which he obtained from the association? He may have been willing to give this large premium to this company because he was a shareholder thereof, and because, on this account, he was interested in making the operations of the company successful ; but, nevertheless, was he not giving the sum which he contracted to give for the use of the money which he obtained ? Suppose a stranger had borrowed this money upon the same terms, and the amount which he contracted to pay for the use of it had been split into fragments—a part styled interest, a part premium, and a part expenses, or something else, could any court hold such a contract other than an evasion of the act forbidding more than seven per cent. for the use of money ? If so, the act had as well be repealed. The ingenuity of money lenders could easily devise plans by which more than seven per cent. could be realized, if simply styling the excess by some other name than interest, can pass the courts.

There may be a doubt as to the wisdom of any act limiting the per cent. which parties shall charge for the use of money. There may be a doubt whether legislation upon this subject is not as injurious as legislation attempting to regulate and control the contracts of parties in reference to corn or cotton, or any other article of commerce and trade. But there can hardly be a

doubt that a contract of this kind, where—cover it up as you may—it is apparent that a party has contracted to pay $77 per annum more than the legal interest, is in violation of the act which forbids the taking of more than this interest. It is useless, however, to discuss the question upon general principles, or upon the construction which shall be given to this special contract. This court is bound by authority, and when a question has been decided by our own courts, as long as that decision stands—whether wise or unwise—whether destructive of the interests to which it applies or not, it must be enforced, unless so apparently wrong as to demand overruling.

We regard the question here as settled by the case of *Columbia Building and Loan Association* v. *William Bollinger,* 12 *Rich. Eq.* 124, in which a very learned and able opinion of the distinguished Chancellor on the Circuit, Chancellor Carroll, was overruled by the Supreme Court. That case and this are almost identical. The charters of the two companies were nearly the same; the by-laws almost exactly alike. A stockholder in that company, as in this, borrowed in advance a certain sum of money, which, he expected, would ultimately be his. He borrowed at public bidding, as in this. He contracted, as here, by bond and mortgage, to pay the monthly interest. The premium, instead of being paid monthly, was deducted at the time of the contract. This was paid in cash, instead of by monthly installments. This is the only difference between the cases. Is this a difference in principle? We do not so understand it. The court, in that case, held the contract usurious. Judge O'Neall, with that strong conviction which characterized all of his opinions, declaring "that there was no doubt about it," and, but for the earnest and able decree of Chancellor Carroll, he would not have thought it necessary even to look into the authorities on the subject.

The argument of Chancellor Carroll, and the opinion of the Supreme Court overruling it, present the two opposing views on this subject. The decree of Chancellor Carroll is based upon two prominent grounds: *First.* That the dealing of the parties was a transaction between partners and in reference to partnership funds, and was not a loan. He cited *Silver* v. *Barnes,*

6 *Bing. N. C.* 180, and several English authorities. *Second.* That the money advanced to Bollinger was but that which he, Bollinger, would get when the corporation wound up, and if he was willing to deduct $300—the premium—because he was getting the money in advance, there was nothing illegal in this. In that case, as has already been stated, the premium was deducted at the time the contract was made instead of being contracted to be paid in monthly installments, as the interest was to be paid. The Chancellor thought that, in this respect, it was like a party agreeing to take less for a debt than the amount actually due, and, having executed the contract, he could not afterwards dispute or repudiate it.

These positions, which are the only ones that can be taken with any plausibility in support of such a contract, after full consideration by the Supreme Court, were overruled, and the contract of Bollinger was declared usurious. We are bound by this decision. It is therefore unnecessary to go into a discussion of the authorities referred to by Judge Mackey, showing the feelings and tendency of the courts on the subject of usury. The case of Bollinger is controlling.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

McIVER and McGOWAN, A. J.'s, concurred.